UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


CLINT THOMAS MELTON            )
                              )
         Petitioner,          )
v.                            )          3:09-cv-610
                              )          *Phillips*
                              )
DAVID MILLS, Warden,          )
                              )
         Respondent.          )


## MEMORANDUM


    This is a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, filed by

petitioner Clint Thomas Melton ("Melton").  The matter is before the court on the motion for

summary judgment filed by the Tennessee Attorney General on behalf of the respondent and

petitioner's response thereto.  For the following reasons, the motion for summary judgment

will be **GRANTED**, the petition for the writ of habeas corpus will be **DENIED**, and this

action will be **DISMISSED WITH PREJUDICE**.  All other pending motions will be

**DENIED** as **MOOT**.

I.    Standard of Review

A state prisoner is entitled to habeas corpus relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.  If no hearing is required, the district judge is to dispose of the case as justice dictates.  If the record shows conclusively that Melton is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied.  *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.    Factual Background

The respondent has provided the court with copies of the relevant documents as to Melton's direct appeal and post-conviction proceedings.  [Court File No. 7, Notice of Filing Documents, Addenda I-III].  Melton was indicted by the Knox County Grand Jury in a 17-count indictment for the offenses of theft, especially aggravated kidnapping, aggravating kidnaping, aggravated robbery, and attempted aggravated robbery.  He was convicted by a jury, in the Circuit Court of Knox County, Tennessee, of one count of aggravated robbery and one count of attempted aggravated robbery, and was acquitted on the remaining charges.  Melton received consecutive sentences of 30 years and 14 years, respectively, on the

aggravated robbery and attempted aggravated robbery convictions. The convictions and sentence were affirmed on direct appeal. *State v. Melton*, No. E1999-02090-CCA-R3-CD, 2000 WL 1545050 (Tenn. Crim. App. Oct. 19, 2000) [Addendum II, Doc. 3], *perm. app. denied, id.* (Tenn. July 16, 2001) [Addendum II, Doc. 6].

On direct appeal, Melton challenged the sufficiency of the evidence against him as well as alleged errors on the part of the trial court. The Tennessee Court of Criminal Appeals summarized the evidence against Melton as follows:

> In August 1998, Shirley Anderson was employed at the Rocky Hill's Beauty Salon in Knoxville as a beautician. She had worked the date of Saturday, August 1, but left early to have lunch with her granddaughter, Rachel Baird, and Rachel's mother, Doris. At approximately 4:00 p.m., Ms. Anderson returned to the beauty salon accompanied by her granddaughter and Doris Baird in order that Ms. Anderson could tally up her daily business receipts. All three entered the business which, by this time, was closed for the day. Shortly thereafter, the appellant entered the salon and asked if he could get a haircut. Ms. Anderson told him that the salon was closed, and he left. Moments later, the appellant returned and asked when would the shop be open again. When Ms. Anderson told him not until Monday, the appellant replied, "Good, you ladies have a seat. I want your money." The appellant instructed, "Everybody sit down and nobody'll get hurt." Ms. Anderson picked up her purse and put it on her shoulder. In doing so, she noticed her cellular phone inside her purse. At this point, Rachel, who was only twelve years old, became frightened and tried to escape through a doorway, but the appellant blocked her way. Ms. Anderson told the appellant that they did not have any money and that he should leave them alone. The appellant stated, "Lady, do I have to come over there and cut that strap off your shoulder?" Ms. Anderson noticed that the appellant, who was wearing surgical gloves, had what appeared to be a knife in his hands. Ms. Baird also observed the appellant holding "something sharp," what she thought was a knife. Ms. Anderson retrieved her cellular phone from her purse and began dialing 9-1-1. The appellant grabbed Ms. Baird's purse which was located on a hair dryer seat and ran out the door. Doris Baird ran after the appellant and Ms. Anderson followed. Ms. Anderson, realizing that the beauty salon door was unlocked, returned to the business.

The appellant got into a truck and drove off. Doris Baird flagged down a teenager, jumped in his car, and asked him to follow the appellant. The appellant was able, however, to elude his pursuers. As they were stopped at a red light, a lady from another car knocked on the window and gave Baird a license tag number. As the vehicle in which Ms. Baird was a passenger was turning around to return to the beauty salon, she observed a police car. Baird flagged down Officer Patricia Tipton and provided the officer with the license tag number she had just received from the unidentified motorist. Officer Tipton gave the information to the patrol officers on the scene at the salon. This information was then relayed to Detective Terry Clowers. As a result of the information he received, Detective Clowers located the truck and the appellant. Both Anderson and Baird identified the appellant as the perpetrator from a composite photo line-up. At trial, Anderson, Doris Baird and Rachel Baird identified the appellant as the robber.

*State v. Melton*, 2000 WL 1545050 at **1-2. The appellate court concluded the evidence was sufficient to support the convictions, *id*. at *3, and that the allegations of error lacked merit, *id*. at **3-6.

Melton then filed a petition for post-conviction relief, in which he asserted various claims of ineffective assistance of counsel, as well as trial court error and vindictive prosecution. The post-conviction petition was denied after an evidentiary hearing, and the Tennessee Court of Criminal Appeals affirmed. *Melton v. State*, No. E2008-01277-CCA-R3-PC, 2009 WL 2176579 (Tenn. Crim. App. July 22, 2009) [Addendum II, Doc. 9], *perm. app. denied, id.* (Tenn. Oct. 19, 2009) [Addendum II, Doc. 11].

In support of his petition for the writ of habeas corpus, Melton alleges the following thirteen (13) grounds for relief, as summarized by the court: (1) the evidence was insufficient to support the convictions; (2) the trial court failed to instruct the jury on the lesser included offense of theft; (3) the trial court admitted hearsay testimony concerning Melton's

automobile license tag number in violation of the Confrontation Clause; (4) the trial court refused to admit photographs of Melton's tattoos for identification purposes; (5) the trial court improperly enhanced Melton's sentence without proof of bodily injury; (6) the Knox County Sheriff's Department interfered with Melton's defense in violation of his right to substantive due process; (7) the prosecution rested on an impermissible basis of information from a biased police officer; (8) the convictions resulted from vindictive prosecution and prosecutorial misconduct; (9) Melton's attorney rendered ineffective assistance of counsel; (10) the trial court made an improper reference to the inference of guilt in its jury instruction on identification; (11) the trial court gave an improper instruction on intent; (12) the trial court improperly enhanced Melton's sentence in violation of *Blakely* and *Apprendi*; and (13) various trial court errors. The respondent contends he is entitled to judgment as a matter of law based on either procedural default, the findings of the Tennessee state courts, or because the claim is not cognizable in federal habeas corpus proceedings.

III.    Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must

have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Melton cannot file another state petition for post-conviction relief. Tenn. Code Ann. § 40-30-102(c). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

The court has reviewed the entire record of this case, including Melton's brief to the Tennessee Court of Criminal Appeals on direct appeal of his conviction and his appellate brief on appeal from denial of post-conviction relief. On direct appeal, Melton raised the following five issues for review:

> 1.     Whether there was insufficient evidence as a matter of law to support the verdicts.
>
> 2.     Whether the Court erred in failing to instruct the jury on the lesser-included offense of theft.
>
> 3.     Whether the Court erred in the admission of hearsay evidence concerning the defendant's automobile license tag number.
>
> 4.     Whether the Court erred in denying the admission of photographs of the defendant's tattoos.
>
> 5.     Whether the Court erred in the application of enhancement factor TCA Section 40-35-114(11) - The felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person, and the defendant has previously been convicted of a felony that resulted in death or bodily injury.

[Addendum II, Doc. 1, Brief of Appellant, p. 6].

In his appeal from the denial of post-conviction relief, Melton raised the claim that he was denied the effective assistance of counsel. [Addendum II, Doc. 7, Brief of Appellant, p. 18]. Melton specifically alleged that counsel failed to obtain from law enforcement agencies photographs of his tattoos showing that he had the tattoos prior to the commission

of the crime and thus counsel was precluded from introducing the photographs at trial to support his claim of mistaken identity; that counsel failed to present an alibi defense by failing to call Patricia Maples as an alibi witness; and that counsel erroneously advised him to not testify. [*Id*. at 21-23].

Based upon the foregoing, Melton has procedurally defaulted the following claims for relief, as summarized by the court: (6) the Knox County Sheriff's Department interfered with Melton's defense in violation of his right to substantive due process; (7) the prosecution rested on an impermissible basis of information from a biased police officer; (8) the convictions resulted from vindictive prosecution and prosecutorial misconduct; (10) the trial court made an improper reference to the inference of guilt in its jury instruction on identification; (11) the trial court gave an improper instruction on intent; (12) the trial court improperly enhanced Melton's sentence in violation of *Blakely* and *Apprendi*; and (13) various trial court errors. In addition, any claims of ineffective assistance of counsel not specifically raised by Melton in his brief on appeal from the denial of post-conviction relief are likewise procedurally defaulted.

To the extent Melton contends his post-conviction counsel erred in failing to pursue grounds for relief during post-conviction proceedings, such a contention will not afford Melton relief from a finding of procedural default. Attorney error will constitute cause to excuse a default only if it rises to the level of constitutionally ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

*Coleman v. Thompson*, 501 U.S. 722, 755 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). *See also McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

However, ineffective assistance of counsel cannot violate the constitution where there is no Sixth Amendment right to counsel, *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982), and a post-conviction petitioner has no constitutional right to counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Murray v. Carrier*, 477 U.S. at 488. Accordingly, allegations of attorney error cannot suffice as "cause" to excuse Melton's procedural default. *See Coleman v. Thompson*, 501 U.S. at 752; *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 426 (6th Cir. 2003) ("To the extent Gulertekin may assert ineffective assistance of her post-conviction counsel as cause for the procedural default of her claim for ineffective assistance of trial counsel, she is barred by the fact that she has no constitutional right to such counsel. Thus, she is unable to demonstrate cause for the procedural default of this claim."); *see also* 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

IV.    <u>Non-Cognizable Claims</u>

The respondent contends that Melton's challenges to the trial court's evidentiary rulings are not cognizable in federal habeas corpus proceedings, specifically the following

two claims for relief: (3) the trial court admitted hearsay testimony concerning Melton's automobile license tag number in violation of the Confrontation Clause; and (4) the trial court refused to admit photographs of Melton's tattoos for identification purposes. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *accord, Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").

Melton claims that the testimony concerning his tag number violated the Confrontation Clause and that the refusal to admit photographs of his tattoos violated his right to due process. The court finds, however, that based upon the record as a whole Melton has failed to demonstrate that his right to a fair trial was abridged. Accordingly, the court lacks jurisdiction to consider these two claims.

With respect to Melton's second ground for relief, that the trial court failed to instruct the jury on the lesser included offense of theft, the respondent contends that the trial court's decision was neither contrary to nor an unreasonable application of clearly established federal law. The court notes, however, that this claim was presented to the Tennessee Court of Criminal Appeals as a matter of state law only, specifically the failure of the trial judge to comply with state law requirements. [Addendum II, Doc. 1, pp. 14-15]. As such, "it is not cognizable in a federal habeas corpus proceeding." *Spalla v. Foltz*, 788 F.2d 400, 405 (6th

Cir. 1986). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 779 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) ("Errors of state law alone cannot form the basis of relief under federal habeas corpus."); *Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995) ("When and how state law applies to a particular case is a matter on which the state supreme court has the last word. No federal issues are implicated and no federal question is presented in determining whether a change in state law is to be applied retroactively.") (citation omitted). The court thus lacks jurisdiction to consider this claim.

V.    State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Melton may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and Melton must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). Melton has failed to rebut, by clear and convincing evidence, the findings of the state courts and they will be presumed correct by this court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. In light of the foregoing, the court will consider Melton's remaining claims for relief.

VI.   Discussion of Claims on the Merits

*A. Sufficiency of the Evidence*

In a federal habeas corpus proceeding in which a state prisoner challenges the sufficiency of the evidence supporting his conviction, the petitioner "is entitled to a determination whether the record evidence could support a finding of guilt beyond a

reasonable doubt." *Moore v. Duckworth*, 443 U.S. 713, 714 (1979). However, the petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). *See Brofford v. Marshall*, 751 F.2d 845, 856 (6th Cir. 1985).

When reviewing a jury's verdict under a sufficiency of the evidence standard, a court must consider all the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. at 319. Witness credibility is an issue to be left solely within the province of the jury, *Deel v. Jago*, 967 F.2d 1079, 1086 (6th Cir. 1992); *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988), and substantial deference should be given to the trier of fact. *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir. 1984). "[T]he federal court sitting in habeas should not attempt to substitute its own opinion for that of the jury which convicted the petitioner." *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988). A conviction should be affirmed if *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986), *aff'd*, 483 U.S. 171 (1987).

On direct appeal, Melton argued "that his convictions were based solely upon the testimony of eyewitnesses who presented contradictory proof concerning the physical description of the perpetrator." *State v. Melton*, 2000 WL 1545050 at *2. He also claimed that there was no "physical evidence" connecting him to the crimes. *Id.*

In considering Melton's claim that the evidence was not sufficient to support his convictions, the Tennessee Court of Criminal Appeals first noted that the standard is that set forth in *Jackson v. Virginia*. *State v. Melton*, 2000 WL 1545050 at *2. The appellate court also observed that a "jury conviction removes the presumption of innocence from the defendant and replaces it with one of guilt," that "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom," and that the appellate court "may not reweigh or reevaluate the evidence." *Id.* (citations omitted). The court then concluded that the evidence was sufficient to support Melton's conviction:

> In this case, the evidence established that Shirley Anderson and Doris Baird both identified the appellant from a police photographic line-up without hesitation. Additionally, notwithstanding some discrepancies in their testimony at trial, all three eyewitnesses made in-court identifications of the appellant.

> Inconsistency, inaccuracy and omissions in the description of a defendant by a witness who is otherwise able to positively identify the defendant are questions for the jury to consider in determining the weight to be given the testimony. Further, although inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt.

> The proof in the record establishes that the appellant obtained control over the property of Doris Baird by the use of violence or by fear accomplished by the display of a deadly weapon, or reasonably believed to be a deadly weapon. Also, the proof establishes that the appellant acted with the intent to commit aggravated robbery of Ms. Anderson. Moreover, the positive identification testimony of the witnesses established the appellant as the perpetrator of these offenses. Accordingly, we find the evidence is sufficient

to support the finding that the appellant is guilty of aggravated robbery and attempted aggravated robbery beyond a reasonable doubt.

*Id*. at 3 (quoting *State v. Corey Lamont Radley*, No. 01C01-9803-CR-00113 (Tenn. Crim. App. July 15, 1999) (internal citation omitted)), *perm. app. denied, id*. (Tenn. Dec. 27, 1999)) (other citations omitted).

This court has reviewed the transcript of evidence at Melton's trial [Addendum 1, Vol. 2, Transcript of Evidence, pp. 1-52] and finds the decision by the Tennessee Court of Criminal Appeals is supported in the record. Ms. Anderson clearly identified Melton at trial as the man who came into the beauty shop that day [*id*. at 6], as did Ms. Rachel Baird [*id*. at 19] and Ms. Doris Baird [*id*. at 22].

Based upon the foregoing, the appellate court's decision was neither contrary to, nor did it involve an unreasonable application of, federal law. Accordingly, Melton is not entitled to relief on his claim that the evidence was insufficient to support his convictions and the respondent is entitled to judgment as a matter of law on that claim.

## B. *Sentence Enhancement*

Melton was sentenced as a persistent offender to consecutive sentences of 30 years and 14 years, respectively, on the aggravated robbery and attempted aggravated robbery convictions. On direct appeal, he claimed that the trial court erred in imposing enhancement factor (11), which allows a court to enhance a defendant's sentence for a felony if "[t]he felony resulted in death or serious bodily injury, or involved the threat of death or serious

bodily injury, to another person, and the defendant has previously been convicted of a felony that resulted in death or serious bodily injury." Tenn. Code Ann. § 40-35-114(11).

In enhancing Melton's sentence under factor (11), the trial court had relied on Melton's prior felony conviction for rape. The Tennessee Court of Criminal Appeals agreed that the trial court erroneously applied factor (11):

> Although the appellant's conduct in the present case "threatened" bodily injury to a person other than the victim, *i.e*., Rachel Baird, the State failed to establish that the appellant has been previously convicted of a felony that resulted in death or bodily injury. The State introduced into evidence the appellant's prior conviction for the felony offense of rape, however, no other proof was introduced to establish that the rape resulted in death or bodily injury. We acknowledge that rape is a serious offense, notwithstanding, bodily injury is neither inherent within the offense of rape nor a necessary element of the offense of rape. Without proof of bodily injury, the trial court erred in using this factor to enhance the appellant's sentences for aggravated robbery and attempted aggravated robbery.

*State v. Melton*, 2000 WL 1545050 at *4 (internal citation omitted). Nevertheless, the appellate court concluded that Melton's sentence was properly enhanced based upon his previous criminal history, which is enhancement factor (1).

> This factor is entitled to great weight as the record reflects that the appellant has been incarcerated for the majority of his adult life. Indeed, he was only released from confinement five months from the date of his arrest on the instant offenses. His criminal history includes, *inter alia*, two rapes, two armed robberies, two burglaries, an assault and battery, and felony escape. The trial court correctly determined that no mitigating factors were applicable. When the sentencing court finds only enhancement factors applicable without any mitigating factors present, the court may set the sentence above the minimum in the range but still within the range. Thus, due to the great weight afforded to enhancement factor (1), we conclude that the appellant's sentences are justified.

*Id*. (internal citation omitted).

On direct appeal, Melton's challenge to his sentence enhancement was based solely on state law. [Addendum II, Doc. 1, Brief of Appellant, p.18]. Melton now claims, however, that the use of his prior criminal convictions to enhance his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004).

Melton is apparently claiming the fact of his prior criminal convictions should have been determined by a jury. In any event, *Blakely* does not apply retroactively to a habeas petition. *See, e.g., In Re Dean*, 375 F.3d 1287 (11th Cir. 2004). "No court has yet determined whether *Blakely* created a new rule of constitutional law made retroactive to cases on collateral review." *Id.* at 1290 (citation omitted). Accordingly, the court lacks jurisdiction to consider Melton's *Blakely* claim.

### C. Effectiveness of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984) the Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970),

Melton must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id.* at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.* at 691-92.

In considering Melton's appeal from the denial of post-conviction relief, the Tennessee Court of Criminal Appeals first summarized his claims of ineffective assistance of counsel:

> On appeal, the petitioner argues that trial counsel committed ineffective assistance of counsel by failing to present photographs of his tattoos in support of his claim of mistaken identity, by failing to present Ms. Maples as an alibi witness, and by advising the petitioner not to testify based upon what he asserts are stale convictions. The State argues that the petitioner failed to prove his allegations of ineffective assistance of counsel by clear and convincing evidence and that the post-conviction court properly denied relief. Following our review, we agree with the State.

*Melton v. State*, 2009 WL 2176579 at *3. The appellate court then noted that *Strickland v. Washington* established the standard for evaluating such claims. *Id.* Finally, the court concluded that Melton had failed to carry his burden of showing ineffective assistance of counsel:

The petitioner asserts that trial counsel was ineffective for failing to prove the existence of his tattoos prior to the date of the offense in support of his mistaken identity defense. He argues that trial counsel should have presented photographs from his prison records and other law enforcement agencies. As noted by the State, on direct appeal this court commented that, had the proper foundation for admission of the photographs been made at trial, "the proof fails to establish the relevancy of the photographs." Additionally, we cannot conclude that trial counsel was deficient for failing to exhibit photographs of the petitioner that would have necessarily indicated his extensive prior involvement with law enforcement. Similarly, we conclude that the post-conviction court correctly found that trial counsel was not deficient in advising the petitioner against testifying given his criminal record that would have subjected the petitioner to impeachment pursuant to Rule 609 of the Tennessee Rules of Evidence.

The petitioner also contends that trial counsel was ineffective in failing to present an alibi defense through Ms. Maples. However, as admitted by Ms. Maples at the evidentiary hearing, she was hesitant to testify, and even hostile at times, given the nature of her relationship with the petitioner. Trial counsel determined that an alibi defense could not be supported with Ms. Maples testimony. The post-conviction court found that trial counsel did not perform deficiently under these circumstances. We conclude that the record supports the findings of the post-conviction court.

*Id.* at *4.

This court has reviewed the record of Melton's post-conviction proceedings. [Addendum III, Technical Record of Post-Conviction Proceedings (three volumes) and Transcript of the Evidence (two volumes)]. The findings by the Tennessee Court of Criminal Appeals are supported in the record.

Patricia Maples testified on behalf of Melton at the evidentiary hearing and stated that she was with him on August 1, 1998, for approximately two hours that afternoon, from ten minutes until four until ten minutes before six. [*Id.*, Vol. 4, Transcript of the Evidence, vol. 1, p. 71]. According to Ms. Maples, she and Melton met at T.J.'s Sports Bar on Sutherland,

next went to Burger King, and then to a movie. [*Id*. at 71-72]. Ms. Maples admitted that, because she is married, she was uncomfortable when Melton's attorney unexpectedly showed up at her house to discuss his alibi; she told counsel she did not want to testify at Melton's trial because she did not want her husband to learn of the affair. [*Id*. at 72-73, 79-80]. She further stated, however, that she would have appeared for trial if subpoenaed. [*Id*. at 73-74].

Melton was represented at trial by attorney Susan Shipley. When asked at the post-conviction evidentiary hearing whether she had interviewed Ms. Maples, Ms. Shipley testified as follows:

> Well, there's more to it than that. Ms. Maples first contacted me in December of 1998. She called me from the phone number of 523-8684. And she told me that she would not be a witness under any circumstances for Clint, that she was not with him; and that if I contacted her, she would bury him. That was her initial contact with me in December of 1998. Subsequent to his indictment, after consultations – and considerably more than five meetings with him, by the way – after consultations with Mr. Melton, I had obtained funding for a private investigator, and I did go out and have a conference with Ms. Maples at her home. No one else was at home. She was there by herself.
>
> We met for a long time. We went in the house and had a lengthy meeting. She did give an account that was considerably at variance with what she just testified to. Yes.

[*Id*. at 81-82].

Ms. Shipley further testified that, based upon that conference, she decided that Ms. Maples would not make a credible witness because she "provided a window for [Melton] to have very easily have committed the crime." [*Id*. at 82].

> The account that she gave me was that she was – had met him at Kroger's near Western Plaza around 9:30 in the morning, and they went to K-Mart. They

were there until 11:30, and that she dropped him off at the Kroger's at Western Plaza where he parked his truck.

She stated that she – that later that afternoon, she went to Colonel's Deli to page him. She says she thinks she might have gone to make the page at 3:30, but she told me "I could be wrong about the time; I could be right."

She told me that after this, she went down back to Kroger's at Western Plaza and noted that neither Mr. Melton nor his truck was there. It was only then after that that she went to T.J.'s bar and had this – met with him. And then later at five o'clock, they went to this dollar movie. And she told me they were there until 8:30 at night.

[*Id*. at 83].

Ms. Shipley also testified that she and Melton discussed whether he should testify, and decided he should not because the jury would learn about his prior felony convictions for rape and aggravated robbery, and that he had been out of prison for less that a year before the instant robbery. [*Id*. at 90].

Based upon the foregoing, this court concludes that the state courts' determinations that Melton received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington*. Melton is not entitled to relief on his claim of ineffective assistance of counsel and the respondent is entitled to judgment as a matter of law on that claim.

VII.    <u>Conclusion</u>

The respondent's motion for summary judgment will be **GRANTED**, the petition for habeas corpus relief will be **DENIED**, and this action will be **DISMISSED**.  Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts.  All other pending motions are **DENIED** as **MOOT**.  Melton having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure.  The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of the Federal Rules of Appellate Procedure.  The court will further **DENY** Melton leave to proceed *in forma pauperis* on appeal.

**AN APPROPRIATE ORDER WILL ENTER.**

<u>    s/ Thomas W. Phillips    </u>
United States District Judge